UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REGGIE F.,
   *Plaintiff*,

v.

MARTIN O'MALLEY,
   Commissioner of Social Security,
   *Defendant*.

No. 3:23-cv-654 (JAM)

### ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND GRANTING COMMISSIONER'S CROSS-MOTION TO AFFIRM

Plaintiff is a military veteran who struggles with intrusive thoughts and who claims that he is unable to work.[1] He brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision denying his claim for a period of disability and disability insurance benefits.[2] Plaintiff has moved to reverse the decision, and the Commissioner has cross-moved to affirm.[3]

For the reasons discussed below, I will deny Plaintiff's motion to reverse and grant the Commissioner's motion to affirm.

#### BACKGROUND

The following facts are taken from transcripts provided by the Commissioner.[4] Plaintiff applied for a period of disability insurance benefits under Title II of the Social Security Act in May 2022.[5] He claimed an onset date of February 2, 2013, and his date last insured was March

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference Plaintiff solely by first name and last initial. *See* Standing Order – Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).
[2] Doc. #1.
[3] Docs. #13, #15. Martin O'Malley became the Commissioner of Social Security on December 20, 2023, replacing Acting Commissioner Kilolo Kijakazi.
[4] *See* Doc. #11. Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. X).
[5] *Id.* at 185–88 (Tr. 182–85).

1

31, 2016.[6] The Social Security Administration ("SSA") initially denied his claim in July 2022 and denied it again upon reconsideration in October 2022.[7] Plaintiff then filed a written request for a hearing.[8]

The hearing took place before an ALJ in January 2023.[9] Plaintiff was represented by counsel and testified.[10] A vocational expert also testified.[11] In February 2023, the ALJ entered a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act.[12] The SSA Appeals Council denied Plaintiff's request for review in April 2023.[13] Plaintiff then filed this federal action seeking review.[14]

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that the claimant is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)).[15]

The SSA engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

---

[6] *Id.* at 22 (Tr. 19).
[7] *Id.* at 76–83 (Tr. 73–80), 86–93 (Tr. 83–90).
[8] *Id.* at 106–07 (Tr. 103–04).
[9] *Id.* at 36–75 (Tr. 33–72).
[10] *Id.* at 36 (Tr. 33), 41–63 (Tr. 38–60).
[11] *Id.* at 63–73 (Tr. 60–70).
[12] *Id.* at 17–32 (Tr. 14–29).
[13] *Id.* at 4–6 (Tr. 1–3).
[14] Doc. #1.
[15] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, brackets, and derivative citations for all quotations from cases.

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts to the Commissioner at Step Five to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from February 2, 2013, his alleged onset date, through March 31, 2016, his date last insured.[16] At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: posttraumatic stress disorder ("PTSD"), major depressive disorder, and carpal tunnel syndrome.[17] The ALJ also noted Plaintiff's non-severe impairments: nausea and vomiting with unknown etiology, involuntary movements with unknown etiology, mild pulmonary restriction, obesity, and marijuana use disorder.[18]

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in

---

[16] Doc. #11 at 22 (Tr. 19).
[17] *Ibid.*
[18] *Id.* at 23 (Tr. 20).

20 C.F.R. Part 404, Subpart P, Appendix 1.[19] The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following non-exertional limitations: he can understand, remember, and carry out simple instructions; no public interaction; no teamwork or tandem tasks; occasional simple changes; frequent fingering and handling with the right, dominant, upper extremity."[20]

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant work through the date last insured.[21] At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Plaintiff's age (37 as of the date last insured), education (high school), work background, and RFC could perform the requirements of a sweeper cleaner, automobile detailer, and industrial cleaner—positions which collectively represented approximately 78,000 jobs in the national economy.[22]

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 2, 2013 through March 31, 2016.[23]

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the

---

[19] *Id.* at 24–25 (Tr. 21–22).
[20] *Id.* at 26 (Tr. 23).
[21] *Id.* at 31 (Tr. 28).
[22] *Id.* at 31–32 (Tr. 28–29).
[23] *Id.* at 32 (Tr. 29).

Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

### *Intrusive thoughts*

Plaintiff argues that the ALJ "fail[ed] to discuss the plaintiff's intrusive thoughts" or to "offer any analysis as to what impact the intrusive thoughts might have on employability."[24] This is belied by the ALJ's ruling, which analyzed the full range of mental health symptoms about which Plaintiff testified and that appeared in his medical records, including intrusive thoughts.[25] Rather than failing to consider or discuss intrusive thoughts, the ALJ simply disagreed with Plaintiff's characterization of their impact. He concluded that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms" were not consistent with the evidence in the record.[26] *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ . . . is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.").

Indeed, the ALJ's summary of the record shows that in each year during the relevant period, the Plaintiff was moderately distressed but also functional in his day-to-day life. In 2013, he "had poor sleep, low energy, anhedonia, social isolation, helplessness, nightmares, worry, forgetfulness, and hypervigilance."[27] But he also was "independent with his activities of daily living," "actively looking for work," and "able to spend time with family, clean, meet his

---

[24] Doc. #13-1 at 13.
[25] Doc. #11 at 26–30 (Tr. 23–27).
[26] *Id.* at 26 (Tr. 23).
[27] *Id.* at 27 (Tr. 24).

neighbors, and could care for his son."[28] Significantly, he worked at Staples for part of that year and stated that he "had good sales numbers and got along well with other employees and customers."[29] He stopped this work because his hours were cut.[30]

Plaintiff also worked at Target for a period of time but stated that he quit due to pain from having to ride his bike to work.[31] He reported that, although he looked for other work throughout the year, "he denied positions for multiple reasons including limited childcare and limited pay offered."[32] As the ALJ noted, "[t]his is not consistent with his testimony that his mental impairments prevented all of his work opportunities."[33]

Similarly, from 2014 through 2016, Plaintiff experienced difficulties with sleeping, motivation, socializing, and anxiety, but also attended college classes, volunteered at his son's school, exercised regularly, and traveled to visit family.[34]

The medical opinions offered supported the ALJ's conclusion that, although Plaintiff did experience mood, sleep, and social dysfunctions, these did not prevent him from engaging in any and all work. Doctors Robert Decarli and Susan Uber found that he had "mild to moderate limitations in the areas of mental functioning such that he would do best in work away from the public and without teamwork and would do best in an unchanging job."[35]

Based on Plaintiff's personal history and the medical evidence, the ALJ concluded that, although the record revealed some limitations due to Plaintiff's impairments, it also showed that he "could have performed a range of unskilled work."[36]

---

[28] *Ibid.*
[29] *Ibid.*
[30] *Ibid.*
[31] *Ibid.*
[32] *Ibid.*
[33] *Ibid.*
[34] *See id.* at 27–28 (Tr. 24–25).
[35] *Id.* at 28 (Tr. 25).
[36] *Id.* at 30 (Tr. 27).

Plaintiff argues that the record "establishes substantial evidence of intrusive thoughts" and provides nearly two pages of examples.[37] This misses the point. The ALJ's decision did not rest on a finding that Plaintiff's claims were false, but rather on the conclusion that none of Plaintiff's symptoms, including intrusive thoughts, left him completely unable to work.

Nor does Plaintiff's testimony that his mental health symptoms "probably" precipitated "the majority" of his job losses undermine the ALJ's ruling.[38] "The Commissioner is not obligated to credit a claimant's testimony about her limitations and symptoms, but has discretion to evaluate the claimant's credibility in light of the evidence in the record." *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016). Moreover, Plaintiff's claim that he left his job at Staples because of his mental health symptoms, not due to the hours, is belied by the record in multiple places.[39] Here, a reasonable mind could interpret the record to show that Plaintiff's unemployment was not due to his impairments.

In sum, the ALJ considered the totality of Plaintiff's mental and emotional symptoms and their effect on his ability to work, both as described by Plaintiff and as revealed in the record. At its core, then, Plaintiff's objection to the ruling can only be that it failed to specifically name "intrusive thoughts" as often as it named his other impairments. This alone does not rob the decision of the "substantial evidence" required for it to stand. I therefore decline to reverse the ALJ's decision on this basis.

---

[37] Doc. #13-1 at 14–15 n.19.
[38] Doc. #11 at 53 (Tr. 50).
[39] *See id.* at 872 (Tr. 869), 891 (Tr. 888), 901 (Tr. 898).

### *Deficiencies in concentration, persistence, and pace*

Plaintiff next claims that the RFC is unsupported by substantial evidence because it fails to adequately address his limitations in concentration, persistence, and pace.[40] I do not agree.

Based on Plaintiff's "moderate limitation" in these areas, the ALJ concluded that Plaintiff could "carry out simple instructions" and navigate "occasional simple changes," but did not have the capacity to tolerate public interaction, teamwork, or tandem tasks.[41]

Plaintiff cites numerous cases outside this Circuit for the proposition that RFCs requiring simple or low-stress work do not sufficiently account for moderate limitations in concentration, persistence, or pace.[42] Courts in this Circuit, however, have repeatedly held the opposite, upholding RFCs that address these deficiencies by prescribing work that involves routine tasks, few changes, and low-stress environments. *See McIntyre*, 758 F.3d at 152 (holding that substantial evidence supported the conclusion that a claimant with limitations in concentration, persistence, and pace could engage in "simple, routine, low stress tasks"); *Matta v. Astrue*, 508 F. App'x 53, 55 (2d Cir. 2013) (upholding an ALJ's finding that plaintiff's "moderate difficulties in concentration, persistence and pace," as well as "moderate difficulties in social functioning," limited him to "simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public"); *Bonazelli v. Saul*, 2021 WL 791176, at *7 (D. Conn. 2021) ("Moderate limitations in concentration, persistence, and pace are not inconsistent with an RFC for simple, routine work, which is reflected in the

---

[40] Doc. #13-1 at 16.
[41] Doc. #11 at 25–26 (Tr. 22–23).
[42] Doc. #13-1 at 17–18.

8

limitation to simple instructions with few changes in the workplace."); *Athena W. v. Comm'r of Soc. Sec.*, 2023 WL 2262790, at *5 (W.D.N.Y. 2023) (collecting cases).

As Plaintiff himself notes, "marked limitations in mental functioning . . . do not mandate a finding of disability," *Danielle B. v. Comm'r of Soc. Sec.*, 2021 WL 766857, at *4 (W.D.N.Y. 2021), and "[c]ourts within the Second Circuit have repeatedly held that marked limitations in mental functioning . . . can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks," *Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 166 (W.D.N.Y. 2020).

In a footnote, Plaintiff wonders "how an individual who is suffering from flashbacks and intrusive thoughts can remain on task during such episodes, whether the individual was performing a 'simple' task, or a more detailed or complex task."[43] However, he does no more than pose the question and cites no case law suggesting that courts in this Circuit have drawn a distinction between PTSD and other impairments that might disrupt concentration, persistence, or pace, via flashbacks, intrusive thoughts, or otherwise.[44] On the contrary, in cases of claimants with PTSD, courts have repeatedly upheld RFCs that prescribed simple, routine tasks, few changes, and minimal social interaction, just as the ALJ did here. *See Gary H. v. Comm'r of Soc. Sec.*, 2020 WL 7239821 (W.D.N.Y. 2020); *Cranmer v. Saul*, 2020 WL 2512869 (W.D.N.Y. 2020). All in all, I cannot conclude, on the record or the law, that the RFC here lacked a basis in substantial evidence.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion to reverse (Doc.

---

[43] *Id.* at 17 n.20.
[44] He does offer a wealth of case law from other circuits, none of which is binding and some of which conflicts with Second Circuit law. *Id.* at 17–19.

#13) and GRANTS the Commissioner's motion to affirm (Doc. #15). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 24th day of April 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge